**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 04-20013 |
| ) | |
| **ALEJANDRO SALAZAR,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM AND ORDER

Alejandro Salazar has filed a motion for a writ of audita querela[1] (Doc. 95). In response, the Government asks this court to deny the motion based on the waiver in Mr. Salazar's plea agreement and based on the merits of his argument. For the reasons set forth below, Mr. Salazar's motion is construed as a petition for habeas relief pursuant to § 2241 and is transferred to the Southern District of Illinois.

---

[1] The writ of audita querela is a direct action, essentially equitable in nature, contemplating a valid defense to the judgment, and absence of a legal remedy, including the right of appeal. *Oliver v. City of Shattuck*, 157 F.2d 150, 153 (10th Cir. 1946). It is "used to challenge a judgment that was correct at the time rendered but which is rendered infirm by matters which arise after its rendition." *United States v. Torres*, 282 F.3d 1241, 1245 n.6 (10th Cir. 2002) (brackets and internal quotation marks omitted).

**I.     Background**

On March 29, 2004, Mr. Salazar pled guilty to one count of distributing over 50 grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1). Paragraph nine of the plea agreement with the Government contained the following waiver provision:

> Waiver of Appeal and Collateral Attack. Except as set forth herein, defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution and sentence. The defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. By entering into this agreement, he knowingly waives any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court. He also waives any right to challenge a sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 [except as limited by United States v. Cockerham, 237 F.3d 1179, 1187 (10th Cir.2001) ], as well as any motion brought under 18 U.S.C. § 3582(c)(2). In other words, he waives the right to appeal the sentence imposed in this case except to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court.

The remainder of the waiver paragraph provided the following exception: "if the court determines the defendant's prior conviction for involuntary manslaughter . . . is a crime of violence within the meaning of U.S.S.G. § 4B1.1 and classifies him as a career offender . . . the defendant . . . reserves the right to appellate review of that ruling."

The court ruled that Mr. Salazar was a career offender under § 4B1.1 of the sentencing guidelines, based in part on the court's determination that Mr. Salazar's involuntary manslaughter conviction constituted a "crime of violence" for purposes of the guideline. Mr. Salazar appealed his sentence, and the Tenth Circuit upheld the determination that Mr. Salazar was a career offender under the guidelines, ruling that the

involuntary manslaughter conviction was a "crime of violence" for purposes of that enhancement. *United States v. Salazar*, No. 94-3339, 2005 WL 2338892, at *1-2 (10th Cir. Sept. 26, 2005). The Tenth Circuit concluded, however, that the court had applied the guidelines in violation of *United States v. Booker*, 543 U.S. 220 (2005), which mandated resentencing. *Salazar*, 2005 WL 2338892, at *3.

Upon resentencing, this court imposed a 262-month prison sentence. The Tenth Circuit dismissed Mr. Salazar's subsequent appeal on the basis of the Government's motion to enforce the appeal waiver contained in the plea agreement. *United States v. Salazar*, No. 06-3015, 2006 WL 1976606 (10th Cir. July 14, 2006).

In late 2007, Mr. Salazar filed a petition for relief under 28 U.S.C. § 2255 (doc. 78). This court dismissed that petition (doc. 85), granting the Government's motion to enforce the waiver in Mr. Salazar's plea agreement. Mr. Salazar sought to appeal that decision, but both this court and the Tenth Circuit declined to issue a certificate of appealability. *United States v. Salazar*, No. 08-3151, 2009 WL 289805 (10th Cir. Feb. 6, 2009).

Mr. Salazar's current motion for a writ of audita querela seeks a reduced sentence in light of *Begay v. United States*, 128 S. Ct. 1581 (2008), which held that driving under the influence of alcohol is not a "violent felony" for purposes of the Armed Career Criminal Act.

**II.     Plea Waiver**

The court will hold a defendant and the government to the terms of a lawful plea agreement. *United States v. Arevalo-Jimenez*, 372 F.3d 1204, 1207 (10th Cir. 2004); *United States v. Atterberry*, 144 F.3d 1299, 1300 (10th Cir. 1998). Thus, a knowing and voluntary waiver of collateral attack rights in a plea agreement is generally enforceable. *United States v. Cockerham*, 237 F.3d 1179, 1181 (10th Cir. 2001). The Tenth Circuit has adopted a three-pronged analysis for evaluating the enforceability of such a waiver in which the court must determine: (1) whether the disputed issue falls within the scope of the waiver, (2) whether the defendant knowingly and voluntarily waived his rights, and (3) whether enforcing the waiver would result in a miscarriage of justice. *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam).

    A.    Scope of the Waiver

In determining whether the disputed issue falls within the scope of the waiver, the court begins with the plain language of the plea agreement. *United States v. Anderson*, 374 F.3d 955, 957 (10th Cir. 2004); *Hahn*, 359 F.3d at 1328. The plea agreement is construed "according to contract principles and what the defendant reasonably understood when he entered his plea." *Arevalo-Jimenez*, 372 F.3d at 1206 (internal quotation and citations omitted). The court strictly construes the waiver and resolves any ambiguities against the government and in favor of the defendant. *Hahn*, 359 F.3d at 1343.

Bearing these principles in mind, the waiver provision in Mr. Salazar's plea agreement, quoted above, clearly encompasses Mr. Salazar's right to challenge his sentence and his status as a career offender.

B.     Knowing and Voluntary

In assessing the voluntariness of a defendant's waiver, the court looks primarily to two factors–whether the language of the plea agreement states that the defendant entered the plea agreement knowingly and voluntarily and whether there was an adequate Rule 11 colloquy. *United States v. Smith*, 500 F.3d 1206, 1210-11 (10th Cir. 2007).

Both conditions are satisfied here. Paragraph nine of Mr. Salazar's plea agreement expressly states that he "knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, conviction and sentence." *United States v. Leon*, 476 F.3d 829, 834 (10th Cir. 2007) (concluding that a defendant did not meet the burden of showing that the waiver was unknowing and involuntary in part because plea agreement contained broad waiver that defendant "knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, conviction and sentence").

In addition, the court, during its Rule 11 colloquy with Mr. Salazar, specifically discussed that he had waived his right to challenge his sentence through a § 2255 motion. Mr. Salazar understood that he had waived his right to assert such claims and that he was entirely willing to do so. *Id.* (finding that defendant did not meet the burden of showing

that the waiver was unknowing and involuntary in part because defendant testified at the plea colloquy that he was competently, knowingly, freely and voluntarily entering his plea and waiving his constitutional rights, including his right to appeal) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court [affirming a plea agreement] carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.")).

Moreover, this waiver has previously been construed by this court and by the Tenth Circuit as being knowing and voluntary. Mr. Salazar offers no argument to the contrary.

C.  Miscarriage of Justice

Enforcing a waiver results in a miscarriage of justice only if (1) the district court relied on an impermissible factor such as race, (2) the defendant received ineffective assistance of counsel in conjunction with the negotiation of the waiver, (3) the sentence exceeds the statutory maximum, or (4) the waiver is otherwise unlawful in the sense that it suffers from error that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Hahn*, 359 F.3d at 1327.

This court is concerned that the waiver in this case would seriously undermine the fairness and integrity of the judicial proceedings. Mr. Salazar specifically requested a conditional plea to allow him to challenge on appeal whether his involuntary manslaughter conviction constituted a crime of violence. He raised this claim as early

as the plea negotiations, anticipating that a court of appeals or even the Supreme Court might conclude that his involuntary manslaughter conviction was not a crime of violence. And he was partially correct—the Supreme Court's opinion in *Begay* supports the argument he was making throughout his plea, sentencing, and direct appeal.

The problem he faces now, however, is that his plea agreement failed to except this issue from his waiver of his right to collaterally attack his sentence. The court can find no principled reason why the issue would be excepted from a direct appeal but not from a collateral attack waiver. Narrowly construing the waiver and drawing any ambiguities in favor of Mr. Salazar, *Hahn*, 359 F.3d at 1343, the court concludes that to enforce that waiver as to this collateral attack would be to value form over substance and would result in a miscarriage of justice.

For that reason, the waiver of Mr. Salazar's right to collaterally attack his sentence will not be enforced only to the extent that he is allowed to again raise the "crime of violence" issue.

### III.  Appropriate Vehicle for Relief

The court next must decide whether a writ of audita querela is the proper vehicle for Mr. Salazar's argument, or whether some other procedure is more appropriate.

A.  28 U.S.C. § 2255

7

Mr. Salazar's argument sounds most like a § 2255 claim, challenging the validity of his sentence and detention. *Johnson v. Taylor*, 347 F.2d 365, 366 (10th Cir. 1965); *Barkan v. United States*, 341 F.2d 95, 96 (10th Cir. 1965). Indeed, the "exclusive remedy for testing the validity of a judgment and sentence, unless it is inadequate or ineffective, is that provided for in 28 U.S.C. § 2255." *Id.*

Mr. Salazar has already filed one § 2255 petition, and so this request for relief would be a second or successive petition. But the mere fact that a petitioner is precluded from filing a second § 2255 petition does not establish that the remedy in § 2255 is inadequate. *Caravalho v. Pugh*, 177 F.3d 1177, 1179 (10th Cir. 1999). And a petitioner cannot "avoid the bar against successive § 2255 petitions by simply styling a petition under a different name," *Torres*, 282 F.3d at 1246.

Courts have found § 2255 to be inadequate or ineffective only in extremely limited circumstances. *Caravalho*, 177 F.3d at 1178. For example, courts have found or suggested the § 2255 remedy is inadequate or ineffective in instances where the sentencing court is abolished at the time petitioner seeks relief, *Spaulding v. Taylor*, 336 F.2d 192, 193 (10th Cir. 1964); where the sentencing court refuses to consider the petition or unreasonably delays its consideration, *Stirone v. Markley*, 345 F.2d 473, 475 (7th Cir. 1965); where more than one court has sentenced the petitioner and no single court can afford complete relief, *Cohen v. United States*, 593 F.2d 766, 771 n.12 (6th Cir. 1979); and where the gate keeping language of § 2255 bars retroactive application of a

case that does not state a new rule of constitutional law, *Reyes-Requena v. United States*, 243 F.3d 893, 904 (5th Cir. 2001).

It is this last example that fits Mr. Salazar's situation. For example and illustration, this court looks to a previous statutory interpretation decision of the Supreme Court.

In 1995, the Court handed down *Bailey v. United States*, 516 U.S. 137 (1995), which altered the definition of "use" of a firearm under 18 U.S.C. § 924(c)(1) to require active employment of the firearm. Following that decision, many courts were faced with petitioners like Mr. Salazar—petitioners who had been convicted and sentenced under the prior definition of "use" and who wished to have their sentence modified to reflect the *Bailey* decision. In each of these cases, the petitioners' direct appeal and any collateral attack had been completed prior to the *Bailey* decision.

Several circuits concluded that § 2255 was inadequate in those circumstances and would not be useful to petitioners wishing to raise a *Bailey* claim. Petitioners were unable to satisfy the prerequisite for filing a successive § 2255 petition, which requires proof of newly discovered evidence or a new rule of constitutional law. § 2255(h). *Bailey* did not announce a new rule of constitutional law; it was a statutory interpretation decision that adjusted the meaning of a criminal statute. *Reyes-Requena*, 243 F.3d at 900; *In re Jones*, 226 F.3d 328, 329 (4th Cir. 2000); *In re Dorsainvil*, 119 F.3d 245, 247-48 (3d Cir. 1997).

9

Thus, petitioners were left with no recourse to correct their convictions and sentences. For that reason, several circuits concluded that § 2255 was inadequate. *Reyes-Requena*, 243 F.3d at 904; *Jones*, 226 F.3d at 333-34; *Dorsainvil*, 119 F.3d at 251-52. These courts all noted the important factors in reaching their conclusions: the petitioner's sentence and conviction was legal according to the applicable law at the time it was imposed; subsequent to the petitioner's direct appeal and first § 2255 motion, the law changed so that the conduct for which the petitioner was convicted and sentenced no longer warranted that conviction or sentence; and that the petitioner could not satisfy the standard for a successive § 2255 because the new rule was not one of constitutional law. *See, e.g.*, *Reyes-Requena*, 243 F.3d at 904; *Jones*, 226 F.3d at 333-34; *Dorsainvil*, 119 F.3d at 251.

This court believes that, facing a similar issue with *Begay*, the Tenth Circuit would likely adopt this standard for determining when § 2255 is inadequate. Applying this standard to Mr. Salazar, the court concludes that § 2255 is inadequate to address the *Begay* issue he raises. His sentence followed the settled law of the circuit at the time, but a later non-constitutional, statutory interpretation decision may have changed the characterization of the conduct for which Mr. Salazar received an increased sentence.

To be clear, § 2255 is not inadequate merely because a petitioner cannot satisfy the requirements of a second or successive petition. That holding would eviscerate the requirements of successive petitions. *Dorsainvil*, 119 F.3d at 251. Instead, following the decision of circuits that have addressed this situation, this opinion is limited to non-

10

constitutional rules that retroactively apply to collateral attack and that alter the conduct that is punishable.

Thus, although Mr. Salazar is attempting to challenge the validity of his conviction and sentence, § 2255 is an inadequate vehicle for him to do so.

B.  Writ of Audita Querela

"According to its ancient precepts, the writ of audita querela was invented to afford relief in behalf of one against whom execution had been issued or was about to be issued upon a judgment, which it would be contrary to justice to allow to be enforced, because of matters arising subsequent to the rendition thereof." *Oliver*, 157 F.2d at 153. Unlike coram nobis, which is "used to attack a judgment that was infirm at the time it issued, for reasons that later came to light," audita querela is "used to challenge a judgment that was correct at the time rendered but which is rendered infirm by matters which arise after its rendition." *Torres*, 282 F.3d at 1245 n.6 (brackets and internal quotation marks omitted).

It is not entirely clear in this circuit whether a writ of audita querela may issue in the criminal context. *See, e.g.*, *United States v. Ballard*, No. 08-5172, 2009 WL 1489193, at *2 (10th Cir. May 27, 2009) (unpublished decision). Federal Rule of Civil Procedure 60 formally abolished both audita querela and coram nobis in civil cases. *See* Fed. R. Civ. P. 60(e). Although the Supreme Court has held that coram nobis is nonetheless available in the criminal context through the All Writs Act, *see United States v. Morgan*, 346 U.S. 502, 507-10 (1954), there is no comparable Supreme Court holding

with respect to audita querela.  At least four other circuits "have questioned whether audita querela may also be used to vacate an otherwise final criminal conviction under the All Writs Act," *Torres*, 282 F.3d at 1245 n.6 (internal quotation marks omitted), and they have assumed, "without deciding, that in some set of circumstances audita querela might appropriately afford post-conviction relief to a criminal defendant." *United States v. Reyes*, 945 F.2d 862, 865 (5th Cir. 1991) (collecting cases).

The Tenth Circuit is clear, however, that "a writ of audita querela is not available to a petitioner when other remedies exist, such as a motion to vacate sentence under 28 U.S.C. § 2255." *Torres*, 282 F.3d at 1245 (quotation and citation omitted).  As noted above, § 2255 is not available in this case because it is inadequate and ineffective for the unique situation of Mr. Salazar's argument.  But other remedies exist—including a habeas petition under § 2241, as discussed below.  With another possible remedy and with no previous guidance in this circuit approving the use of a writ of audita querela, this court is hesitant to entertain that type of motion.

C.     28 U.S.C. § 2241

Courts facing petitioners in Mr. Salazar's situation have often identified a § 2241 petition as the proper vehicle for relief.  *Reyes-Requena*, 243 F.3d at 901; *Jones*, 226 F.3d at 332-33; *Dorsainvil*, 119 F.3d at 251; *United States v. Lorentsen*, 106 F.3d 278, 279 (9th Cir. 1997).

A petition under 28 U.S.C. § 2241 attacks the execution of a sentence rather than its validity and must be filed in the district where the prisoner is confined. *United States v. Scott*, 803 F.2d 1095, 1096 (10th Cir. 1986). It is not an additional, alternative, or supplemental remedy to § 2255. *Williams v. United States*, 323 F.2d 672, 673 (10th Cir. 1963). But where, as here, § 2255 is an inadequate remedy, a § 2241 petition may be used to challenge the validity of a petitioner's sentence and confinement. § 2255(e); *United States v. Dago*, 441 F.3d 1238, 1249 (10th Cir. 2006).

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's motion for a writ of audita querela (doc. 95) is construed as a petition for habeas relief pursuant to § 2241.

**IT IS FURTHER ORDERED** that the motion is transferred to the Southern District of Illinois, the district in which Mr. Salazar is confined.

**IT IS SO ORDERED** this 10th day of August, 2009.

                                        s/ John W. Lungstrum  
                                        John W. Lungstrum  
                                        United States District Judge